7 N.J. Super. 282 (1950)
73 A.2d 69
OSCAR A. PETERSON, PLAINTIFF-APPELLANT,
v.
BOARD OF ADJUSTMENT OF THE TOWN OF MONTCLAIR, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1950.
Decided April 26, 1950.
*283 Before JACOBS, McGEEHAN and EASTWOOD.
Mr. Vincent P. Biunno argued the cause for appellant (Mr. Samuel Rosenblatt, attorney; Messrs. Lum, Fairlie & Foster, of counsel).
Mr. Samuel Allcorn, Jr., argued the cause for respondents.
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
The plaintiff appeals from a judgment entered in the Superior Court, Law Division, in favor of the defendants, in a proceeding in lieu of prerogative writ brought to review the refusal of the Board of Adjustment of the Town of Montclair to grant special exceptions to the terms of the zoning ordinance.
In November, 1948, plaintiff made an application to the Board of Adjustment, in which he set forth that he owned premises known as No. 91 South Mountain Avenue and petitioned *284 for a permit "to continue to use the present two story frame and stucco house as a one family residence dwelling, and have a 2' 6" side yard on the northerly side of said property in lieu of 6'; and have a 16' rear yard in lieu of 25'." The Board of Adjustment denied the application on December 9, 1948.
Some history of the property must be set forth. Prior to 1948 the premises now referred to as No. 91 South Mountain Avenue, together with the premises referred to as No. 95 and No. 99 South Mountain Avenue, formed a single lot with a front of 190 feet and a depth of about 230 feet. On this lot there was a large single-family dwelling located approximately in the center of the lot (now on No. 95), a guest house to the south of the main dwelling (now on No. 99), a building containing three garages to the rear of the main dwelling, and a combined barn and carriage house to the north (now on No. 91). This combined barn and carriage house was located close to the rear and north side lines of the lot. This lot was in one ownership from 1924 until sold to the plaintiff on August 2, 1948.
Under the zoning ordinance in effect in 1931, and prior thereto, the property was in a residence "A" zone which was limited to one-family detached dwellings but permitted buildings for accessory use if located on the same lot, and which required that each lot have a rear yard of not less than 25 per cent of the depth of the lot, but not in excess of 25 feet, and two side yards of not less than 6 feet on one side and 8 feet on the other side. The property met the requirements of the zoning ordinance, except that the barn and carriage house had a side yard of only 2 1/2 feet instead of 6 feet and a rear yard of only 16 feet instead of 25 feet. Since the barn and carriage house antedated the zoning ordinance, the structure could continue upon the lot as a nonconforming structure. R.S. 40:55-48.
In 1931 the owner applied for and obtained a building permit which authorized the making of alterations to the barn and carriage house without altering the existing walls. The *285 application for this building permit stated that the barn was to be used as "Domestic quarters;" the building permit set forth the proposed use as "Servants quarters" and provided: "This Permit is subject to all existing Town ordinances." Use of a building, located on the same lot as the main dwelling, for servants' quarters was permitted as an accessory use under the zoning ordinance. Notwithstanding the restricted accessory purpose for which the conversion was applied for and granted, the converted structure was leased to independent tenants as a one-family dwelling from 1933 on.
In May, 1948, the prior owner made application to the Board of Adjustment for a variance, which was denied. Thereafter, on August 2, 1948, the plaintiff purchased the entire property. He immediately carved up the lot into three separate parcels. He sold the southern parcel and the central parcel to different purchasers and contracted to sell the northern parcel, referred to as No. 91, to still another purchaser. Because of the refusal of the purchaser of No. 91 to take title without a special exception to the zoning ordinance, the plaintiff made his application of November, 1948, to the Board of Adjustment.
The "present two story frame and stucco house" mentioned in plaintiff's application is the former barn and carriage house. The lot on which it now stands, referred to as No. 91 South Mountain Avenue in the application, is in the shape of a reverse "L"; the street frontage forming the top of the "L" is 33 feet, the long side 228.07 feet, the short side 157.82 feet, and the base 131.84 feet. It has an area of less than 11,000 square feet within 200 feet of the street line and a total area of 14,886 square feet. On this lot are two buildings  one the converted barn and carriage house mentioned above and the other a garage having no side yard to the south. This garage is the northerly one-third of the three-car garage building erected on the original lot, the rest of the building being now located on the property to the south.
The zoning ordinance in effect in 1948 was the Zoning Ordinance of 1937, as amended. It continued the residence *286 zone limitation to one-family detached dwellings, with permission to use buildings for accessory use if located on the same lot, but changed the designation of the zone from residence "A" to residence "R-O" and required two side yards of at least 12 and 18 feet, respectively, a rear yard of 20 per cent of lot depth, but it need not exceed 30 feet, and a minimum lot area of 20,000 square feet within the first 200 feet from the street line. As noted above, the converted barn and carriage house antedated the zoning ordinances and could continue as a nonconforming structure.
A grant of plaintiff's application to use the converted building on lot No. 91 as a one-family dwelling would have the following result: It would (1) permit a 2 1/2-foot side yard on one side and no side yard on the other side instead of two side yards of at least 12 and 18 feet, respectively; (2) permit a 16-foot rear yard instead of a 30-foot rear yard; (3) permit a total lot area of less than 11,000 square feet within 200 feet of the street line instead of a minimum of 20,000 square feet; and (4) permit the forming of the new lot No. 91 in spite of the prohibition in the zoning ordinance against the formation of any new lot from part of a parcel of land on which there is an existing building, except where the division is "effected in such manner as not to impair any of the provisions of this Ordinance."
R.S. 40:55-39, as amended by L. 1948, c. 305, § 6, authorizes the Board of Adjustment to grant requests for special exceptions "Where by reason of exceptional narrowness, shallowness or shape of a specific piece of property at the time of enactment of the regulation * * * the strict application of any regulation enacted under the act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the owner of such property * * *." The further amendment of this section by L. 1949, c. 242, § 1, appears to make no change in this power of the Board.
The exceptional "L" shape of lot No. 91, relied upon by the plaintiff to bring it under this section, did not exist "at the time of enactment of the regulation." Aside from *287 this, there is no merit in the claim that denial of the application was arbitrary and capricious because exceptional and undue hardship upon the owner was clearly shown. The exceptional and undue hardship is said to arise from the fact that the owner cannot make any use of lot No. 91 if his application is denied. He cannot use the converted building for the permitted accessory use because this building is not now located on the same lot as any main dwelling, and he cannot build a main dwelling on this lot because it contains less than 11,000 square feet within 200 feet of the street line instead of the required 20,000 square feet. The hardship relied upon was created by the plaintiff when, in violation of the ordinance, he carved lot No. 91 from the original lot. The statute was not intended to provide for relief from this type of hardship. The additional fact that the converted building has been in use as a one-family dwelling since 1933 is of no aid to plaintiff, because such use was in violation of the ordinance.
To grant such an application would be to defeat the regulations governing land use in this one-family residence district. It would permit a landowner to avoid the requirements of the ordinance by subdividing his lot in violation of the ordinance. Such procedure, if permitted, would set at naught the zoning power. Collins v. Board of Adjustment of Margate City, 3 N.J. 200 (1949).
It is also contended that the only ordinance requirement which is not met is the 20,000 square foot area requirement and that the strict application of this requirement imposes an unnecessary hardship upon the owner. The argument advanced is that the 1937 ordinance is an entire and complete zoning ordinance which repealed the old ordinance without any saving clause, and it protects and authorizes the continuance of structures and uses in existence at its passage in 1937; therefore, the use of the converted building as a one-family dwelling at the time of enactment of the 1937 ordinance may be continued as a nonconforming use even though such use from 1933 to 1937 was a violation of the *288 prior ordinance. Even if this were so and the use could continue as a nonconforming use, it could not continue on the new lot No. 91 later carved out of the original lot in violation of the 1937 ordinance. However, the enactment of the 1937 ordinance did not have the claimed effect. The clear design of the 1937 ordinance was to continue the restrictions of the prior ordinance, unless expressly excluded from or modified by the new regulations. There was no express repealer of the prior ordinance but instead a provision that "All ordinances or parts of ordinances inconsistent herewith are hereby repealed." This reveals an intention to have no interruption of continuity  to continue the old except as modified or excluded in the new. Cf. Berry v. Recorder's Court of West Orange, 124 N.J.L. 385 (Sup. Ct. 1940); affirmed, O.B., 125 N.J.L. 273 (E. & A. 1940).
The judgment is affirmed.